THE HONORABLE JOHN C. COUGHENOUR

1
2
3
4
5
6

7
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
8
AT SEATTLE

| | |
|---|---|
| 9 FIRST MERCURY INSURANCE<br>10 COMPANY, a foreign insurer, | CASE NO. C11-0105-JCC |
| 11 Plaintiff, | ORDER GRANTING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT |
| 12 v. | |
| 13 MILLER ROOFING ENTERPRISES, a<br>14 Washington Corporation; TIM<br>MCCLINCY, an individual; MCCLINCY<br>15 BROTHERS FLOOR COVERING, INC.,<br>a Washington corporation, dba<br>16 MCCLINCY'S HOME DECORATING, | |
| 17 Defendants. | |

18      This matter comes before the Court on Plaintiff First Mercury Insurance Company's

19 motion for summary judgment (Dkt. No. 31). Having thoroughly considered the parties' briefing

20 and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the

21 motion for the reasons explained herein.

22 **I.      BACKGROUND**

23      Defendant McClincy Brothers Floor Covering, Inc. maintains a product showroom in a

24 building it leases from Defendant Tim McClincy. (Dkt. No. 32 Ex. 1 ¶ 2.4.) The exterior walls of

25 the building are finished with an exterior insulation and finish system ("EIFS"). (*Id.* Ex. 5 at 4–5;

26 Dkt. No. 46 Ex. H.) In 1997, McClincy Brothers and Tim McClincy hired Defendant Miller

1   Roofing Enterprises to replace three roofs. (Dkt. No. 32 Ex. 1 ¶ 2.5.) Miller Roofing completed

2   the construction in 1998. (*Id.* ¶ 2.6.) In January 2006, water began to leak through one of the

3   roofs into the showroom. (*Id.* ¶ 2.9.) In January and again in June of 2006, Miller Roofing

4   performed some repairs to the roof, pursuant to oral agreements with McClincy Brothers. (*Id.*

5   ¶¶ 2.9, 2.11; *Id.* Ex. 3 ¶¶ 6–7; Dkt. No. 46 Ex. G.) Despite those repairs, during November and

6   December 2007, water leaked into the showroom after heavy rain and snow storms, causing

7   damage to the ceiling, walls, and products and materials on display. (Dkt. No. 32 Ex. 1 ¶ 2.14.)

8          McClincy Brothers and Tim McClincy sued Miller Roofing for, *inter alia*, breach of

9   contract. The trial court found, *inter alia*, that Miller Roofing breached the January and June

10   2006 oral repair agreements. (*Id.* at 13 ¶ 3.) The court of appeals reversed and remanded for a

11   determination as to whether the breach-of-oral-contracts claims were barred by the statute of

12   limitations and, if not, whether Miller Roofing is liable for the alleged breaches and the measure

13   of damages caused thereby. (*Id.* Ex. 10 at 15–22.)

14          Miller Roofing's insurer, First Mercury, defended Miller Roofing in the underlying suit

15   under a reservation of rights and filed this action for a declaration of no coverage. (Dkt. No. 33

16   Ex. D.) The insurance policy at issue contains the following EIFS exclusion:

17
18        This insurance does not apply to . . . "property damage" included in the
        "products-completed operations hazard" and arising out of "your work" described
19        as . . . [a]ny work or operation with respect to any exterior component, fixture or
        feature of any structure if any "exterior insulation and finish system" is used on
20        any part of that structure.

21   (Dkt. No. 33 Ex. C at 38). First Mercury moves for summary judgment that the policy does not

22   cover the breach-of-oral-contracts damages Miller Roofing allegedly owes McClincy Brothers

23   and Tim McClincy.

24   **II.   DISCUSSION**

25          Summary judgment is proper when there is no genuine issue as to any material fact and

26   the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). The

ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT
PAGE - 2

1    interpretation of an insurance policy is a question of law. *Pub. Util. Dist. No. 1 v. Int'l Ins. Co.*,

2    881 P.2d 1020, 1025 (Wash. 1994). Courts construe the terms of an insurance policy in a "fair,

3    reasonable, and sensible" manner, as "the average person purchasing insurance" would

4    understand them. *Overton v. Consol. Ins. Co.*, 38 P.3d 322, 325 (Wash. 2002) (quotation marks

5    omitted). If the policy language is clear and unambiguous, the court must enforce it as written

6    and may not modify it or create ambiguity where none exists. *Int'l Ins. Co.*, 881 P.2d at 1025.

7         The EIFS exclusion bars coverage. Defendants do not contest that the alleged breach-of-

8    oral-contracts damages are for "property damage" arising out of Miller Roofing's "work" on the

9    roof. (Dkt. No. 32 Ex. 5 at 5; Dkt. No. 45 at 12–13.) They do not contest that "'exterior

10   insulation and finish system' is used on any part of th[e] [building]." (Dkt. No. 32 Ex. 5 at 4–5;

11   Dkt. No. 45 at 14.) And they do not contest that the roof is "an[] exterior component, fixture or

12   feature of . . . that [building]." (Dkt. No. 32 Ex. 5 at 5.) Under the plain language of the EIFS

13   exclusion, there is no coverage. *See, e.g.*, *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*,

14   292 S.W.3d 48, 62–63 (Tex. Ct. App. 2006), *reversed in part on other grounds*, 279 S.W.3d 650

15   (Tex. 2009).

16        Defendants argue that the EIFS exclusion does not apply because the leak was the result

17   of "defective workmanship to the roof itself," and "Miller Roofing did not install the EIFS on the

18   building, nor did it undertake to make any repairs to the EIFS itself." (Dkt. No. 45 at 1–2; *see id.*

19   at 14–16 (same).) Even if that is true, it is irrelevant. The exclusion applies not only to property

20   damage arising from *EIFS*-related work by the insured; it applies to property damage arising

21   from "*any*" work by the insured on an exterior component, fixture, or feature of a structure, as

22   long as "'exterior insulation and finish system' is used on any part of that structure." Those

23   conditions are met here.

24        Defendants also point out that "[t]he building is not constructed entirely of EIFS, but

25   rather EIFS is employed on the exterior walls of the structure." (Dkt. No. 45 at 14.) Again, that is

26   irrelevant. The exclusion applies if "*any* 'exterior insulation and finish system' is used on *any*

ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT

1  part of th[e] structure."

2      Defendants object that First Mercury's (and the Court's) reading of the exclusion

3  "mean[s] that [First Mercury] could escape any liability for any negligent act performed by

4  Miller Roofing on the building because cladding [EIFS] was placed over the exterior walls."

5  (Dkt. No. 45 at 16.) Unfortunately for Defendants, that is the meaning of the policy Miller

6  Roofing paid for and signed. Indeed, the U.S. Court of Appeals for the Fifth Circuit recently

7  described an identical EIFS endorsement as "excluding any injuries arising out of . . . any work

8  [the insured] performed on any exterior component of a building if an EIFS was used on any part

9  of that structure." *Trinity Universal Ins. Co. v. Employers Mut. Cas. Co.*, 592 F.3d 687, 690,

10  692–93 (5th Cir. 2010). "The exclusion[] appear[s] designed to exclude from coverage anything

11  that could possibly leak or otherwise permit moisture to enter a structure when that structure has

12  EIFS installed on it." *Pine Oak Builders*, 292 S.W.3d at 62 n.11; *see Ins. Corp. of Hannover v.*

13  *Skanska USA Bldg., Inc.*, No. B-05-304, 2008 WL 2704654, at *4 n.5 (S.D. Tex. 2008)

14  (describing identical EIFS exclusion as "broad" and "excluding coverage for damage for other

15  work performed on a structure unrelated to the installation of EIFS, if EIFS was installed on any

16  part of that structure").

17      Defendants point the Court to *Luxury Living, Inc. v. Mid-Continent Casualty Co.*, No.

18  Civ.A. H–02–3166, 2003 WL 22116202 (S.D. Tex. Sept. 10, 2003). That case involved an EIFS

19  endorsement that "exclud[ed] from coverage 'Property damage' arising out of the 'Exterior

20  Insulation and Finish System Hazard [EIFS],'" where EIFS was defined as including:

21          Any work or operations with respect to any exterior component, fixture or feature
22          of any structure if an "exterior insulation and finish system" is used on any part of
23          that structure by you or on your behalf.

24  *Id.* at *11 (alteration in original). The court held that the insurer's duty to defend was triggered

25  because "the plaintiffs [in the underlying suit] alleged that the negligence in construction and

26  supervision extended far [beyond] mere improper installation of EIFS, to a myriad of conditions

ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT
PAGE - 4

reflective of negligent construction of the Residence" that did "not involve any work or operations with respect to any exterior component, fixture or feature of any structure (*e.g.*, inadequate crawl space ventilation, improper fastening of folding stairs, incorrect placement of the water heater, defects in the dishwasher drain hose)." *Id.* at *17 (quotation marks and indications of alteration omitted).

*Luxury Living* is distinguishable for two reasons. First, unlike in *Luxury Living*, here, the allegedly negligently constructed component (the roof) is, unquestionably, an "exterior component, fixture or feature" of the building. *See, e.g.*, *Pine Oak*, 292 S.W.3d at 63 ("The roof itself clearly falls within the 'exterior component, fixture, or feature' portion of the EIFS exclusions."). Second, the EIFS exclusion in *Luxury Living* required that *the insured* (or someone on his behalf) use EIFS on the structure in order for property damage arising out of the insured's work to be excluded. 2003 WL 22116202, at *11. Here, the policy requires only that "any 'exterior insulation and finish system' [be] used on any part of th[e] structure."

*Capitol Specialty Insurance Corp. v. Yuan Zhang*, No. C11–41Z, 2012 WL 1252638 (W.D. Wash. Apr. 13, 2012), is also distinguishable. The exclusion in *Capitol Specialty* provided:

> This insurance does not apply to . . . "property damage" arising out of any [EIFS] work . . . .
>
> This exclusion applies to any "EIFS" . . . work described in Paragraphs 1. and 2. below performed by any insured or on behalf of any insured.
> . . . . .
> 2. Any . . . construction, . . . installation, . . . or repair . . . of any exterior component, fixture or feature of any structure if any "EIFS" work . . . is used on any part of that structure.

Plaintiff's First Motion for Summary Judgment (Dkt. No. 23) at 8–9, *Capitol Specialty*, No. C11–41Z (W.D. Wash. July 5, 2011). In *Capitol Specialty*, the court rejected the insurer's argument that the exclusion "bars coverage for damages arising out of *any* work on the Apartments' exterior if *any* portion of the building is clad in EIFS," holding instead that "the

1   exclusion only bars coverage for damages arising out of the insured's work with EIFS, or for

2   damages associated with, or caused by, EIFS." 2012 WL 1252638, at *3. A difference in policy

3   language explains the difference in the outcomes of *Capitol Specialty* and this case. The

4   endorsement in *Capitol Specialty* required that EIFS *work*, performed by or on behalf of the

5   insured, be used on the structure for the exclusion to apply. *See id.* Here, the First Mercury

6   policy requires only that *EIFS* be used on the structure for the exclusion to apply. Here, unlike in

7   *Capitol Specialty*, the insurer "unambiguously delineated when and how the exclusion applie[s]."

8   *Id.* at *3 n.3.

9          Because the EIFS exclusion bars coverage, the Court need not consider First Mercury's

10  alternative arguments for non-coverage.

11  **III.    CONCLUSION**

12         For the foregoing reasons, the Court GRANTS First Mercury's motion for summary

13  judgment (Dkt. No. 31).

14         DATED this 22nd day of February 2013.

15

16

17

18

19

20  _____

21  John C. Coughenour
    UNITED STATES DISTRICT JUDGE

22

23

24

25

26

ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT
PAGE - 6